RECEIVED
BY MAIL
APR 21 2005
CLERK US DIST COURT
MINNEAPOLIS MN

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MINNESOTA

WILLIAM HARRY THOMPSON,

Defendant/Petitioner,

Docket No. 0:02CR00308-001
(MJDJGL)

- V -

UNITED STATES OF AMERICA,

Respondent/Plaintiff.

**MEMORANDUM OF LAW IN SUPPORT**

**OF MOTION PURSUANT TO 28 USC SECTION**

**2255**

## Introduction

Now comes petitioner, William Harry Thompson (Defendant) pro/se collaterally appeals his 262 month sentence and conviction for Possession with Intent to Distribute approximately 90 grams of a mixture containing a detectable amount of cocaine base on August 27, 2002, in violation of 21 USC Section 841(a)(1) and (b)(1)(A), on the grounds that his conviction was obtained by a plea of guilty which was unlawfully induced, not made voluntarily, and without understanding the consequences of the plea; that his trial counsel's deficient performance rendered the proceedings constitutionally in-adequate, in violation of defendant's Sixth Amendment right to effective assistance of counsel and that prosecutorial misconduct

SCANNED
APR 25 2005
U.S. DISTRICT COURT ST. PAUL

deprived him of a fair trial, in violation of defendant's Fifth Amendment right to due process of law.

**The Offense Conduct.**

This case was investigated and presented for prosecution by the Drug Enforcement Administration in conjunction with State and local authorities. The offense description below is based on investigative materials provided to the U.S. Attorney's Office.

In August 2002, officers of the minneapolis Minnesota Police Department received information that the defendant was distributing large amounts of cocaine base throughout the twin cities. Agents utilized a confidential informant and made approximately three controlled buys of an unspecified amount of cocaine base from the defendant.

On August 27, 2002, agents executed a search warrant at 8623 Fremont Avenue North, Brooklyn Park, Minnesota. The defendant shared this residence with his girlfriend, Renitta Jones. Agents located a man's leather jacket with approximately $500 in U.S. Currency and 0.89 grams of cocaine in the pockets, a Tamita digital grams scale with visible narcotics residue, five cellular telephones, and miscellaneous identification including a wallet and a social security card belonging to the defendant in the upstairs master bedroom. In the vanity cabinet in the master bedroom bathroom, agents located a Taurus .22 caliber semi-automatic handgun with magazine and a box of 22 caliber long rifle rounds. Agents seized 19 individually packaged units of cocaine base weighing a total of 87.10 grams and $4,300 in U.S. Currency from the top of an air duct in the rafters of

the basement playroom. Concealed between the wall and sheetrack of the basement playroom, agents located an Arsenal brand AK-47 7-62 Caliber assault rifle with an obliterated serial number. In a basement storage room adjoining the playroom, agents located two 30 round magazines concealed in a guitar case. One of the magazines was empty and the other one was charged with 29 live 7.628 39 caliber cartridges. Additionally, two vehicles located at the residence were impouned: a 1992 Lexus SC400 Coupe and a 2002 Cadillac Escalade.

In all, the defendant is responsible for possessing 87.10 grams of cocaine base, an AK-47, 7.62 Caliber assault rifle, and a Taurus - 22 Caliber semi-automatic handgun. The 0.89 grams of cocaine powder seized from the defendant appears to have been for personal use.

**Victim Impact.**

The defendant pled guilty to Possession with intent to Distribute approximately 90 grams of cocaine base, in violation of 21 USC Section 841(a)(1), pursuant to 18 USC Section 3663(A)(c)(7), restitution is not applicable. Although a restitution order is permissible under 18 USC Section 3663, the probation officer has no information indicating there was a loss incurred by an identifiable victim.

**Jurisdiction.**

The jurisdiction of the court rests on 28 USC Section 2255 which provides:

> "A prisoner in custody under sentence of a court established by Act of Congress claiming

> **the right to be released upon the ground that the sentence was imposed in violation of the Constitution or Laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack may move the court which imposed the sentence to vacate, set aside, or correct the sentence.**
>
> **...If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law, or otherwise open to collateral attack, or that there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgement vulnerable collateral attack, the court shall vacate and set the judgement aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate. 28 USC Section 2255 (2005).**

**Timeliness.**

On April 24, 1996, President Clinton signed the Anti-Terrorism and Effective Death Penalty Act (the Act") which changed the Habeas Corpus written law. The Act deleted that portion of 28 USC Section 2255 which provided that a motion could be made at any time and added a one year period of limitation. The non-retroactivity of the statute running one year after the enactment of the Act. See Calderon v United States, 112 F.3d 386 (9th Cir 1997). Federal prisoners now have one year only in which to file a Section 2255 motion which runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review (10) days. 28 USC Section 2244(d)(1)(A).

In computing any period of time, the day of the Act or event from which the designated period of time begins to run shall not be included. Rule 45, FR.CR.P the time for filing a prisoner's habeas corpus petition is satisfied at the moment it is delivered

to prison authorities for mailing to the court, placed in the United States Mail addressed to the court, delivered to private carrier for delivery to the court, or caused to be filed with the court via United States Mail or carrier for delivery to the court, or caused to be filed with the court via United States Mail or carrier by the prisoner's legal representative. See Huston v. Lack, 487 US___,101 L.Ed.2d 245, 108 S.Ct. 2379, 2384 (1988).

The Calberon court ruled that the Act's provision giving prisoners just one year in which to seek Federal habeas corpus relief is a statute of limitations subject to equitable tolling, not an inflexible limitation on the jurisdiction of Federal courts. Accordingly, the District Court could give the prisoner extra time to file his habeas corpus petition to account for time and effort lost when his lead appointed counsel failed him. There were thus "extraordinary circumstances" which justified tolling, Section101's Statute of Limitation. See Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1987).

Petitioner Thompson was sentenced on February 28, 2003. Former defense counsel Manvir Atwal advised defendant not to appeal his sentence and conviction. Only recently has it come to petitioner's attention that he does have viable claims for collateral post conviction relief. Unfortunately most of his legal papers were lost or destroyed. Since his sentencing, Mr. Thompson and his family attempted to recreate his legal records through the (P.S.I. Report) and the court clerk, not knowing exactly what they needed. After obtaining what they believed were the appropriate records, Mr. Thompson talked to a jail house lawyer and convinced him to assist him by editing and typing

petitioner's notes and drafts and perform research, provide photo-copying, and timely file petitioner's Section 2255 motion with this court.

**First Argument.**

**The conviction was obtained by a Plea of Guilty, which was Unlawfully induced, Not made voluntarily, and Without Understanding the Consequences of the Plea.**

In the plea bargain agreement between petitioner and the government, the parties stipulated to a sentence not to exceed 120 months, which was the middle of the agreed guidelines range under Rule 11(e)(1)(c), F.R.CR.P., which provides that the government will "agree that a specific sentence is the appropriate disposition of the case" (emphasis supplied). The original agreement presented to defense attorney was for ten (10) years, but was later withdrawn by the government, based on prior conviction later learned by the government, which it was not aware of when making the initial offer. The maximum penalty petitioner was facing was 262 months, pursuant to 18 USC Section to 21 USC Section 841(a)(1). Petitioner has been unable to obtain a copy of his plea agreement from his counsel and has not received a copy from the records clerk at the courthouse as of this writing. Nor does he have the benefit of the Plea and Sentencing transcripts to review. Therefore, his argument is based on memory and he respectfully requests that his right to argue the details of the plea agreement be preserved until he can obtain a copy and review the relevant transcripts.

It appears the probation officer ignored the Rule 11(e)(1)(c) plea agreement and the court adopted the Presentence Investigation Report (P.S.I.) thereby sentencing petitioner unlawfully to the maximum of 262 months, in violation of the Fifth and Sixth Amendment.

When the government and defendant strike a plea bargain that identifies an agreed upon sentence as the appropriate disposition, the case is not governed by federal sentencing guidelines. See U.S. v. Aguilar, Dist. Ct., E.D.M.Y. No. 92 CR 1228 (J.B.W.) (May 5, 1995). The Sentencing Commission, the Aguilar court pointed out, has explicitly disavowed any intention to make major changes in the plea agreement practices that were in place prior to the advent of the guidelines era. The rule that allows the parties to specify an agreed sentence, Rule 11(e)(1)(c), does not mention the guidelines even though Rule (c) does. The Commission states its intent not to "make major changes in [pre-guidelines] plea agreement practices." Guidelines Manual, Chapter 1, Part A, at 4(c)(November 1, 1998-99). Its reason: nearly ninety percent of all criminal cases involve guilty pleas and significant changes in the plea bargaining system could, consequently "make the federal system unmanagable." ID.

With this prior practice in mind, the commission decided that the acceptance or rejection of a plea agreement would continue to be governed by Federal Rules of Criminal Procedure Rule 11(e) Id. As for the Guidelines, according to the commission, they create a norm to which courts will likely refer when they decide whether, under Rule 11, calling for a specific sentence "but... may not modify it, United States v. Cunavelis, 969 F.2d 1419, 1422

(2nd Cir 1992).

A defendant waives many constitutional rights by pleading guilty. For this reason, the plea must be entered into knowningly. See Boykin v. Alabama, 395 U.S. 238, 244 (1969). A reasonable person in defendant's position would have understood the only inducement to pleading guilty was to receive a sentence in the range of 10 years. It was the understanding that the agreement he entered into provided for just that, a sentence of no more than 120 months. Without this consideration, petitioner would been no worse off going to trial. In fact, he could have exercised many constitutional rights he was waiving by pleading guilty, and been better for it, at great expense to the tax payers. The Appeal Court consistently endorse fair treatment of plea agreement so as to ensure that defendants are not caught off guard at sentencing, thereby reducing the "steady parade of appeals that squander scarce judicial resources and waste the government lawyer's time. United States v. Pimentel, 932 F.2d 1029, 1033 (2nd Cir. 1991).

Accordingly, the statute requires specific performance of the plea agreement. Petitioner pled guilty in reliance on the government's promise to a lesser than maximum sentence. This court accepted the plea but sentenced petitioner to the maximum penalty of 262 months. Consequently, petitioner's guilty plea was induced through deception, resting on an "unfulfilled promise, and is an unintelligent and involuntary plea, lacking in a proper understanding of the consequences of the plea, all in violation of due process. See Santobello v. New York, 404 U.S. 257, 262 (1971); and Mabry v. Johnson, 467 U.S. 504, 509-10 (1984).

For the foregoing reasons, petitioner should be resentenced to the sentence he was promised by pleading guilty.

**Defense Counsel's deficient performance rendered the trial proceeding constitutionally inadequate, in violation of petitioner's Sixth Amendment right to Due Process of Law.**

The Sixth Amendment guarantees the right to counsel as part of a defendants fundamental right to a fair trial. Strickland v. Washington, 466 U.S. 668 684-85, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The right to counsel is the right to effective assistance of counsel. Id., at 686, 104 S.Ct. at 2067.

The Supreme Court enunciated the standards for judging a criminal defendant's contention that the Constitution requires a conviction be set aside because counsel's assistance at trial was ineffective. See Strickland v. Washington, 466 U.S. 668, 691 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). First, the defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 104 S.Ct. 2063. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 104 S.Ct. 2065. The court must determine whether, in light of all the circumstances, the identified acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 104 S.Ct. 2065. The court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. Second, the defendant must affirmatively prove prejudice. Id at 104 S.Ct. 2067. He must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the results of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

Ineffective assistance of counsel claims frequently split into two categories: those which can be made based on the trial record, and those which are based on additional evidence outside the original record. A petitioner may choose to pursue the former on direct appeal, without waivering his right to bring the latter under Section 2255; this permits the petitioner to develop the record in full. See, e.g. United States v. Miskinis, 966 F.2d 1263, 1269 (9th Cir. 1992). Because the resolution of ineffective assistance of counsel claims ordinarily requires the development of facts outside the original record, "[t]he customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 USC Section 2255" United States v. Birges, 723 F.2d 666 670 (9th Cir.), cert denied, 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984).

Appellate courts perfer defendants to raise such claims in a habeas proceeding because it permits the district court judge first to decide whether the claim has merit, and second, if it does, to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted. See, e.g., United States v. Pops, 841 F.2d 954, 958 (9th Cir. 1988).

Since requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that makes it more difficult for a defendant to upset a conviction by collateral, as opposed to direct attack. As a result, prisoners seeking habeas relief pursuant to Section 2255 are to show both a violation of their constitutional rights and substantial prejudice or a fundamental miscarriage of justice.

The Supreme Court has recognized the rule of procedural default. "[That prisoners] cannot assert claims they failed to raise at trial or on direct appeal unless they can show cause for the default and prejudice resulting from it." See Wainwright v. Sykes, 433 U.S. 72.87 .97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977) See also Reed v. Farley, 512 U.S. 339 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994)(the general rule is that the writ of habeas corpus will not be allowed to service for an appeal...where the petitioner, whether a State or Federal prisoner - failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows actual prejudice from the alleged...violation').

However, the traditional procedural default does not apply to ineffective assistance of counsel claims where such claims depend on matters outside the scope of the record as in the instant case before this court. See, e.g., Billy-Eko v. United States, 8 F.3d 111, 114 (2nd Cir 1993) see also Engle v. Issac, 456 U.S. 107, 135, 102 S.Ct. 1558, 1575-76, 71 L.Ed.2d 783 (1972): The Supreme Court said that since the concepts of cause and prejudice are not rigid, but "take their meaning from...principles

of comity and finality...[i]n appropriate cases those principles must yield to the imperative of correcting a fundamentally unjust incarceration...[W]e are confident that victims of a fundamental miscarriage of justice will meet the cause - and - prejudice standard." Id.

A defendant seeking to have his judgement vacated is entitled to an Evidentiary Hearing on claims that if proven, would entitle him to relief. See Sims v. Livesay, 970 F.2d 1575, 1579 (6th Cir 1992). Petitioner Thompson, contests his conviction on the ground that he was denied the effective assistance of counsel during trial proceedings in derogation of his rights under the Sixth Amendment, and that he was deprived of a fair trial in violation of his Fifth Amendment right to due process. Petitioner alleges the following specific errors and omissions that prejudiced his defense by defense counsel:

**(1) Attorney Manvir Atwal, Deprived Defendant of a Beneficial Plea Agreement and of a Direct Appeal.**

Upon approval of the court, pursuant to Rule 11(a)(2) F.R. Cr.P., a defendant may enter a conditional plea of guilty, reserving in writing the right to appeal any specified pretrial motions. If the petitioner prevails on appeal, he is allowed to withdraw the conditional plea. Petitioner had a strong case for suppressing the evidence to the firearms that were unlawfully seized along with money removed from the master bedroom without his consent and without a search warrant for firearms and money. Counsel, however, failed in his duty to the petitioner to pre-

serve this issue for appeal by negotiating into the plea bargain. Petitioner certainly wasn't getting any bargain with a 262 month sentence, far longer than required for deterrence or any other justification for punishment, considering the special circumstances of this case.

To compound the deprivation of beneficial plea agreement, counsel further failed to object to - and appeal - the court's imposition of the maximum penalty in light of a Rule 11(e)(1)(c) plea agreement for a specific sentence.

A defendant may challenge a guilty plea on the grounds that ineffective assistance of counsel at trial prevented the guilty plea from being knowing and voluntary. The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. See McMann v. Richardson, 397 U.S. 759 771, N.14 (1970). Defendant has the right to a direct appeal. See Coppedge v. United States, 369 U.S. 438, 441 (1962). This right is fundamental to the concept of due process of law. Arrastia v. United States, 455 F.2d 736, 739 (5th Cir 1972). In vindicating this right to appeal, defendant has a constitutional right to effective assistance of counsel under the Sixth Amendment, Evitts v. Lucey, 469 U.S. 387, 396 (1985), and Douglas v. California, 372 U.S. 353, 357 (1963). In Evitts, the U.S. Supreme Court held that:

> [I]n bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that - - like a trial - - is governed by intricate rules that to a lay person would be hopelessly forbidding. An unrepresented appellant - like an unrepre-

> **sented defendant at trial -- is unable to protect the vital interests at stake... [n]ominal representation on an appeal as of right -- like nominal representation at trial -- does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all.**

Id., at 396.

The court concluded that "[a] first appeal as of right is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney. Id. Counsel had viable issues for appeal surrounding the Rule 11 issues discussed above had counsel performed proper research and investigation on the case. Accordingly, defendant is entitled to an Evidentiary Hearing on his ineffective assistance of counsel claim where he seeks to have his judgement vacated. See Sims v. Livesay, 970 F.2d 1575, 1579 (6th Cir. 1992). Petitioner was denied effective assistance of counsel at trial and sentencing, and deprived of a direct appeal. Mr. Thompson, was prejudiced in receiving a more onerous sentence and in being denied an appeal rights of the suppression issues by counsel's deficient performance. A hearing on this matter will establish on the record petitioner's claims of ineffective assistance of counsel, in violation of his Sixth Amendment right to counsel. See Mr. William Harry Thompson's Affidavit in this matter.

**CONCLUSION**

For all the foregoing reasons Petitioner William Harry Thompson's Affidavit in support of his claim in support of his petition. Therefore, Mr. Thompson respectfully prays that this Honorable Court grant his Motion to Vacate and Set Aside his sentence pursuant to 28 USC Section 2255 and order appropriate relief balancing fairness with the interest of justice.

Dated: April 18, 2005.

**CERTIFICATE OF SERVICE**

I, William Harry Thompson do herein and hereby certify that a true and correct copy of my petition for post-conviction relief section 2255 motion being petitioner's original action with relevant pleading has been delivered and mailed to the below named parties on this 18 day of April, 2005.

Dated: April 18, 2005.

Respectfully submitted,

William Thompson

William Harry Thompson
Reg. No. 10617-041
P.O. Box 33
Terre Haute, IN 47808