UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 02-308(MJD)
Civil No. 05-813(MJD)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>WILLIAM HARRY THOMPSON,<br><br>Petitioner. | **MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. SECTION 2255** |

The United States of America, through its attorneys, Thomas B. Heffelfinger, United States Attorney for the District of Minnesota, and Assistant United States Attorney Andrew Dunne, submits the following opposition to Petitioner's Section 2255 motion.

**INTRODUCTION**

The Petitioner, William Harry Thompson, has filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. The Petitioner contends that his conviction was obtained by a guilty plea that was not knowing or voluntary; and that his counsel was ineffective because she "deprived Defendant of a beneficial Plea Agreement and ... Direct Appeal." See Petitioner's Memorandum of Law at p. 12. Petitioner's claims are wholly without merit.

## STATEMENT OF THE CASE AND FACTS

This case involved the investigation and prosecution of the drug trafficking activities of the Petitioner, William Harry Thompson, in the Twin Cities area in August 2002. See Presentence Report (PSR), ¶ 5.

### A. The Investigation

In August 2002, narcotics officers from the Minneapolis Police Department were conducting an ongoing investigation into the crack cocaine distribution activities of WILLIAM HARRY THOMPSON. During the course of this investigation, the officers learned from a Confidential Reliable Informant (CRI) that THOMPSON was distributing large quantities of crack cocaine throughout the Twin Cities area. The CRI also made a number of controlled buys of crack cocaine from THOMPSON. See PSR, ¶ 5.

On August 27, 2002, the officers obtained and executed a state search warrant for THOMPSON and his residence located in Brooklyn Park, Minnesota. During the execution of this warrant, the officers recovered approximately three ounces of crack cocaine and approximately $4,300 in U.S. currency from the top of an air duct in the rafters of the basement playroom area. The officers also recovered a Tanita digital scale (commonly used to weigh narcotics), a Taurus .22 caliber semi-automatic handgun, and a box

of ammunition from the master bedroom. An AK-47 assault rifle, with the serial number obliterated, was recovered between the wall and the sheetrock in the basement playroom. See PSR, ¶ 6.

The officers arrested THOMPSON during the execution of the search warrant. Following his arrest, THOMPSON was interviewed by the officers after being advised of his rights under the Miranda decision. THOMPSON told the officers that the crack cocaine, assault rifle, handgun and money recovered by the officers in his residence belonged to him.

**B. The Federal Charges.**

On October 1, 2002, a one-count Indictment was filed in the District of Minnesota charging the Petitioner with federal narcotics violations including unlawful possession with intent to distribute approximately 90 grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). See PSR, ¶ 1.

**C. The Pretrial Motions Hearing.**

On October 25, 2002, a hearing on Petitioner's pretrial suppression motions was held before Magistrate Judge Jonathan Lebedoff. Petitioner moved to suppress the evidence recovered by the officers during the execution of the search warrant at his residence on August 27, 2002. On October 28, 2002, Magistrate Judge Lebedoff issued a Report & Recommendation denying the

Petitioner's motion to suppress evidence concluding that "the search warrant was issued upon probable cause." See Report & Recommendation at p. 7. The District Court adopted the R&R on November 22, 2002.

**D. The Guilty Plea.**

On February 28, 2003, the Petitioner appeared before this Court and entered a plea of guilty to the one-count Indictment. Pursuant to the terms of the Plea Agreement, the parties stipulated that the adjusted Base Offense Level was a 31 (32 for 90 grams of crack cocaine under Guideline Section 2D1.1(c), plus two levels for the presence of firearms under Guideline Section 2d1.1(b)(1), minus three levels for acceptance of responsibility under Guideline Section 3E1.1). See Plea Agreement, ¶¶ 6-9. The parties estimated defendant's Criminal History Category at category III, but specifically stated that "if the Criminal History Category, as finally computed with the aid of the Presentence Report, is greater than Category III, the parties may not withdraw from the agreement" and "shall be sentenced in accordance with the applicable Sentencing Guidelines." See Plea Agreement, ¶ 10. Assuming an adjusted Offense Level of 31, and a Criminal History Category III, the resulting Guideline Range of imprisonment was 135 to 168 months. See Plea Agreement, ¶ 11. The

parties also acknowledged that a ten year mandatory minimum term of imprisonment was required by the statute. Id.

The United States also agreed to refrain from filing a sentencing enhancement notice under 21 U.S.C. § 851 based upon the Petitioner's prior felony narcotics conviction that would have raised the Petitioner's mandatory minimum sentence to twenty years. See Plea Agreement, ¶ 4. Finally, the Plea Agreement contained a cooperation paragraph that stated the United States would file a downward departure motion under Guideline Section 5K1.1 and 18 U.S.C. § 3553(e) if the Petitioner provided "substantial assistance" to law enforcement officers. See Plea Agreement, ¶ 5.

**E. The PreSentence Report.**

Following the Petitioner's guilty plea, the U.S. Probation Office issued a PreSentence Report (PSR) on April 14, 2003. The PSR determined that the Petitioner was a "Career Offender" under Guideline Section 4B1.1 based upon three prior convictions for drug trafficking and violent criminal offenses. See PSR, ¶ 21. Accordingly, the Applicable Guideline Range in the PSR was adjusted to 262 to 327 months imprisonment. Id.

**F. The Pretrial Release Violations.**

On September 4, 2003, the U.S. Pretrial Services Office submitted a Petition for Revocation of Petitioner's pretrial release based upon his failure to report and absconding from the jurisdiction. Based upon this petition, Magistrate Judge J. Earl Cudd issued an arrest warrant for the Petitioner on September 8, 2003. Prior to absconding from the District of Minnesota, the Petitioner had also been charged with new state court offenses including trespassing on April 27, 2003. See PSR, ¶ 2. The Petitioner was subsequently apprehended by U.S. Marshals in Detroit, Michigan on April 1, 2004. See PSR, ¶ 10. The Petitioner had been placed on a fugitive status for approximately seven months. The Petitioner was returned to the District of Minnesota and detained without bond pending sentencing.

**G. The Revised PreSentence Report.**

On April 30, 2004, the U.S. Probation Office submitted a revised PreSentence Report. Based upon the Petitioner's absconding from the jurisdiction and commission of new crimes while on release, the revised PSR recommended a two level enhancement for "obstruction of justice" under Guideline Section 3C1.1 and taking away the three level reduction for "acceptance of responsibility" under Guideline Section 3E1.1. See PSR, ¶¶ 9-11,

18-19. Accordingly, the revised PSR re-calculated the Petitioner's Applicable Guideline Range of imprisonment at 360 months to life. See PSR, ¶ 106.

**H. The Motion To Withdraw Guilty Plea.**

On May 12, 2004, the Petitioner filed a motion to withdraw from his guilty plea. A hearing was held before this Court on May 13, 2004 on the Petitioner's motion. At this hearing, the undersigned AUSA indicated to the Court that it had no objection to Petitioner's motion to withdraw from the guilty plea. See Transcript, pp. 2-5. However, the undersigned AUSA urged the Petitioner to take some time to reconsider that motion based upon an even higher potential sentence if convicted at trial. Id. After a thoughtful colloquy between this Court and Petitioner, the Court continued the hearing on the motion for two weeks. See Transcript, pp. 5-6, 9-11.

**I. The Sentencing.**

On May 28, 2004, the Petitioner appeared before this Court. In response to this Court's inquiry, the Petitioner stated that he "want[ed] to continue with his guilty plea." See Sentencing Transcript(ST.) at p. 2. Judge Davis then proceeded to sentencing. The Government requested the Court not to adopt the revised PSR's recommendations concerning "obstruction of justice"

and "acceptance of responsibility". See ST. at p. 4. This Court agreed to follow the initial PSR's recommendations concerning the Applicable Guideline Range of imprisonment and imposed a term of imprisonment of 262 months to be followed by a five-year term of Supervised Release. Following the imposition of sentence, this Court told the Petitioner:

> I'm glad that you've taken the time to reflect upon whether or not you should continue on with your plea of guilty or go to trial. With the facts that we're looking at, you were looking at and the evidence that the Government would have against you, it was almost a certainty that you would have been found guilty, and then the sentencing would have been just an enormous amount of time in prison, 360 months to life imprisonment. So with this, I am able to give you a lesser sentence. And you're correct; if you had not made some stupid decisions, you would have served substantially less than what I'm going to give you now.

See ST. at p. 7.

## ISSUES

Petitioner has filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Petitioner claims that he made an unknowing and involuntary decision to enter into the Plea Agreement, without understanding the consequences of his guilty plea, and pled guilty because his counsel failed to adequately advise him. Petitioner also contends that his counsel

was ineffective for: 1) failing to request the Court to uphold an alleged stipulation in the parties' Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C), that his sentence not exceed 120 months; and 2) failing to obtain a "conditional" guilty plea allowing him to reserve the right to raise suppression issues on direct appeal. The Petitioner's claims are without merit.

## ARGUMENT

### PETITIONER KNOWINGLY AND VOLUNTARILY ENTERED INTO A PLEA AGREEMENT AND HAS FAILED TO ESTABLISH INEFFECTIVE ASSISTANCE OF COUNSEL.

Petitioner claims that he made an unknowing and involuntary decision to enter into the Plea Agreement and pled guilty because his counsel failed to adequately advise him. Specifically, Petitioner claims that his counsel did not adequately explain to him the consequences of pleading guilty, did not request the Court to uphold an alleged[1] stipulation in the parties' Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C), that his sentence not exceed 120 months, and did not obtain a "conditional" guilty plea allowing him to reserve the right to raise suppression issues on direct appeal. Far from meeting his

---

[1] There was no such Rule 11(e)(1)(C) stipulation contained in the parties' Plea Agreement. See Attachment A.

heavy burden, however, Petitioner's claims are merely conclusory and wholly disproved by the record itself.

The crux of Petitioner's claim is that defense counsel did not adequately explain to him the consequences of pleading guilty; did not request the Court to uphold an alleged Rule 11(e)(1)(C) stipulation for a specific sentence; and did not preserve his rights to challenge the suppression of evidence. The fatal flaw in Petitioner's allegations stem from a basic misunderstanding of the record below.

First, a review of the parties' Plea Agreement clearly establishes that there was no such Rule 11 (e)(1)(C) stipulation for a specified sentence contained in the agreement. To the contrary, the defendant acknowledged that "assuming an adjusted Offense Level of 31, and a Criminal History Category III, the resulting Guideline Range of imprisonment was 135 to 168 months." See Plea Agreement, ¶ 11. Moreover, the Petitioner acknowledged that "if the Criminal History Category, as finally computed with the aid of the Presentence Report, is greater than Category III, the parties may not withdraw from the agreement" and "shall be sentenced in accordance with the applicable Sentencing Guidelines." See Plea Agreement, ¶ 10. Petitioner's allegation that the Plea Agreement contained an Rule 11(e)(1)(C) stipulation is simply not an accurate recollection of the facts.

Second, the Government never offered a "conditional" plea where the Petitioner could reserve the right to appeal from the suppression issues litigated below. To the contrary, the record clearly establishes that the Petitioner expressly waived those appellate rights by pleading guilty. See Transcript, pp. 13-14. More importantly, the Plea Agreement contained a cooperation paragraph that stated the United States would file a downward departure motion under Guideline Section 5K1.1 and 18 U.S.C. § 3553(e) if the defendant provided "substantial assistance" to law enforcement officers. See Plea Agreement, ¶ 5. Unfortunately for the Petitioner, instead of providing "substantial assistance" to the Government, the Petitioner absconded from the jurisdiction, was placed on a fugitive status with the U.S. Marshal for several months and engaged in new criminal conduct while on pretrial supervision. Accordingly, rather than because of any alleged ineffective performance by defense counsel, the Petitioner was placed into a worse situation due to his own misconduct following his guilty plea.

Finally, Petitioner's claim that defense counsel did not adequately explain the consequences of pleading guilty is completely contradicted by the record below. On May 13, 2004, a hearing was held before this Court on the Petitioner's motion to

withdraw from his guilty plea. At this hearing, the undersigned AUSA indicated to the Court that it had no objection to petitioner's motion to withdraw from the guilty plea. See Transcript, pp. 2-5. However, the undersigned AUSA urged the Petitioner to take some time to reconsider that motion based upon an even higher potential sentence if convicted at trial. Id. After a thoughtful colloquy between this Court and Petitioner, the Court continued the hearing on defendant's motion for two weeks. See Transcript, pp. 5-6, 9-11. On May 28, 2004, the Petitioner again appeared before this Court. In response to this Court's inquiry, the Petitioner stated that he "want[ed] to continue with his guilty plea." See Sentencing Transcript(ST.) at p. 2.

The PSR accurately concluded that Petitioner was a "Career Offender" based upon his prior felony convictions. See PSR, ¶¶ 27, 44. Moreover, based upon the Petitioner's absconding from the jurisdiction and commission of new crimes while on release, the revised PSR recommended a two level enhancement for "obstruction of justice" under Guideline Section 3C1.1 and taking away the three level reduction for "acceptance of responsibility" under Guideline Section 3E1.1. See PSR, ¶¶ 9-11, 18-19. Accordingly, the revised PSR re-calculated the Petitioner's Applicable Guideline Range of imprisonment at 360 months to life. See PSR,

¶ 106. As such, while still a lengthy sentence, the Petitioner would almost certainly have received a much longer sentence if he had withdrawn from his guilty plea. Accordingly, the advice that Petitioner received from his counsel was not only accurate, but well within the "objective standard of reasonableness" required under Strickland v. Washington, 466 U.S. 668, 689 (1984).

The Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), established as the "benchmark" for deciding such claims whether counsel's conduct so undermined the proper functioning of the adversarial process that the conviction cannot be relied on as having produced a just result. Strickland, 466 U.S. at 688-89. A defendant must show that "counsel's representation fell below an objective standard of reasonableness", taking into account a "strong presumption" of counsel's "reasonable professional assistance." Strickland, 466 U.S. at 690.

Moreover, it is well established that a guilty plea is valid so long as it was a voluntary and intelligent choice made by the defendant. Hill v. Lockhart, 474 U.S. 52, 56 (1985). A defendant who pleads guilty based on the advice of counsel may attack the voluntary and intelligent character of the plea only by showing that counsel's representation fell below and "objective standard of reasonableness" and that counsel's error resulted in prejudice.

Id. at 57-58. In order to satisfy the prejudice prong, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. Id. at 59. A presumption exists that counsel's representation was sufficient. Strickland v. Washington, 466 U.S. 668, 690 (1984). The Petitioner has failed to meet the Strickland standard.

In this case, the record firmly establishes that Petitioner's defense counsel effectively represented him. At the Rule 11, Fed.R.Crim.P., plea proceeding, this Court confirmed that defense counsel had answered all of the Petitioner's questions and that the Petitioner was satisfied with his counsel's representation. See Plea Transcript, pp. 9-10, 15. Petitioner stated, under oath, that he had sufficient time to meet with his attorney to discuss the case and to review the Plea Agreement and that he understood the terms of the agreement. Id.

Moreover, the actions taken by Petitioner's counsel prior to and following the Rule 11 proceeding also reflect competent legal assistance, and, indeed, an aggressive defense. Following Petitioner's arrest, his counsel negotiated his release from custody despite an extensive prior criminal record and history of firearms. Defense counsel filed a number of pretrial motions,

including motions for suppression of evidence obtained as result of search and seizure. Most importantly, defense counsel made arrangements to obtain a proffer agreement from the Government in an effort to have the Petitioner earn a downward sentencing departure based upon substantial assistance. Unfortunately, the Petitioner absconded from supervision, was placed in a fugitive status for several months and engaged in new criminal conduct.

When the revised PSR was issued, Petitioner's counsel objected to application of the "Career Offender" provisions of the Sentencing Guidelines that significantly enhanced Petitioner's applicable guideline range of imprisonment. See Addendum to PSR, at A-2. Additionally, Petitioner's counsel objected to the PSR's recommendation for an "obstruction of justice" enhancement and the denial of an "acceptance of responsibility" reduction based upon Petitioner's post guilty plea misconduct. Finally, at sentencing, the Petitioner's counsel was able to persuade the District Court not to apply the recommended "obstruction of justice" enhancement and give him a three level reduction for "acceptance of responsibility" despite his post guilty plea misconduct. Petitioner thereby avoided a substantially harsher Sentencing Guideline range of imprisonment that would have been applicable under the revised PSR's recommendations.

Notwithstanding this record and his own clear statements under oath before the Court at the Rule 11 guilty plea proceeding, the Petitioner now simply claims that his counsel was ineffective because she "failed to adequately explain the consequences of pleading guilty." Once again, the record in this case and Petitioner's own statements contradict this claim.

It is well established that conclusory allegations will not support a motion under 28 U.S.C. § 2255. See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985). Strickland, 466 U.S. at 690, 694 (1984); Estes v. United States, 883 F.2d 645, 647 (8th Cir. 1989) (conclusory allegation was insufficient to rebut strong presumption of counsel's competence). Moreover, the record in this case clearly contradicts the Petitioner's conclusory allegations.

Given the Petitioner's own statements under oath at the Rule 11 plea proceeding, as well as the record of his counsel's active advocacy on her client's behalf, the Petitioner has not met his burden in establishing that he received ineffective assistance of counsel prior to entering into the Plea Agreement.

## CONCLUSION

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 should be denied.

Dated: July 25, 2005

Respectfully submitted,

THOMAS B. HEFFELFINGER
United States Attorney

*s/ Andrew Dunne*

BY: ANDREW DUNNE
Assistant U.S. Attorney
Attorney ID No. 175195