**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                                              **MEMORANDUM**
                                                                                **AND ORDER**

                                                                                **Civil No.  05-813 (MJD)**
                                                                                **Criminal No. 02-308 (MJD/JGL)**

**WILLIAM HARRY THOMPSON,**

    **Defendant.**

---

Andrew S. Dunne, Assistant United States Attorney, for and on behalf of Plaintiff.

William Harry Thompson, pro se.

---

**I.     INTRODUCTION**

    This matter is before the Court on Petitioner Thompson's Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 on the ground that the sentence was imposed in violation of Thompson's Sixth Amendment right to effective assistance of counsel.  (Doc. No. 37 in Case 02-CR-308 and Doc. No. 1 in Case No. 05-CV-813.)

**II.    BACKGROUND**

    On May 28, 2004, Thompson pled guilty to Count 1 of a single count

indictment that charged him with Possession with Intent to Distribute Approximately 90 Grams of a Mixture Containing a Detectible Amount of Cocaine Base in Violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(a). Prior to this plea, the Court had denied Thompson's motion to suppress evidence obtained as a result of search and seizure. (Doc. No. 20 in Case No. 02-CR-308.) On May 28, 2004, the Court sentenced Petitioner to 262 months in prison, the minimum sentence under the then-applicable Sentencing Guidelines.

Petitioner now moves for an order reducing his sentence pursuant to 28 U.S.C. § 2255 on the grounds that he received ineffective assistance of counsel because (1) his counsel deprived Thompson of a beneficial plea agreement and a direct appeal; and (2) he did not knowingly and voluntarily plead guilty. For the following reasons, the Court denies Thompson's motion.

### III. DISCUSSION

#### A. **<u>Thompson's Plea</u>**

Thompson first pled guilty on February 28, 2003. At that time, Thompson and the Government stipulated to an adjusted base offense level of 31, which represented a base level of 32, plus 2 offense levels for the presence of a firearm, minus 3 levels for acceptance of responsibility. (Plea Agree. ¶¶ 6-11.) At that time, the parties contemplated a criminal history category of III, but stipulated that "if the defendant's Criminal History Category, as finally computed with the aid of the

PreSentence Report, is greater than Category III, the parties may not withdraw from the agreement and agree that the defendant shall be sentenced in accordance with the applicable Sentencing Guidelines." (Id. ¶ 10.) Assuming an adjusted offense level of 31 and criminal history category III, the resulting Guideline range was 135-168 months. (Id. ¶ 11.) In addition, the Government agreed to "refrain from filing a sentencing enhancement motion . . . based on the defendant's previous felony narcotics conviction." (Id. ¶ 5.) If Thompson agreed to provide substantial assistance to the Government in its investigation of drug trafficking and other criminal activity, the Government also agreed to file a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (Id. ¶¶ 4-5.) Thompson was released on bond pending sentencing so he could assist the Government with its investigations. (Tr. Feb. 28, 2003 Hr'g at 19-20.)

After accepting Thompson's plea, the Court ordered the Probation Office to conduct a presentence investigation. Probation issued its report ("PSI") on June 18, 2003. According to the PSI, Thompson was a career offender based upon three prior convictions for drug trafficking and violent crimes. (June 18, 2003 PSI ¶ 21.) Thompson's status as a career offender and his criminal history changed the Guideline range applicable to his sentencing. Specifically, Thompson's criminal history category was increased to VI, and his total offense level was increased to

34, resulting in an applicable Guideline range from 262 to 327 months. (Id. ¶ 105.)

On September 8, 2003, a warrant was issued for Thompson's arrest because he failed to report and absconded from justice. Thompson was finally arrested in Detroit on April 1, 2004. Prior to absconding, Thompson was charged with a new state crimes – trespassing and driving after cancellation. (April 30, 2004 Revised PSI ¶ 2.)

Based on these actions, Probation issued a revised PSI and recommended a two level enhancement for obstruction of justice under U.S.S.G. § 3E1.1, and no downward adjustment for acceptance of responsibility since Thompson engaged in obstructive behavior while on bond. (Id. ¶¶ 18-20.) According the revised PSI, Thompson's new offense level was 37, with a criminal history category of VI, resulting in a revised Guideline imprisonment range of 360 months to life. (Id. ¶ 106.)

On May 13, 2004, Thompson appeared before this Court on his motion to withdraw his guilty plea. At that hearing, the Government indicated that it had no objection to Thompson withdrawing his plea, but cautioned Thompson that he could get an even longer sentence, 360 months to life, if found guilty by a jury. (Tr. May 13, 2004 Hr'g at 4-5.) The Government indicated that if Thompson pled guilty, the Government would not insist on adding offense level points for

4

obstruction, and would not object to allowing Thompson to receive a deduction for accepting responsibility. (Id. at 3, 7.) The Court, Thompson's counsel ("Counsel"), and the Government's counsel engaged in a colloquy wherein they informed Thompson that if he was found guilty by a jury, the Court would be bound to sentence him in the 360 months to life range, and he would not be allowed to accept responsibility. (Id. at 2-10.) Counsel was concerned that Thompson was "hesitant" regarding his plea withdrawal, and the Court continued the hearing for over two weeks to give Thompson time to fully consider his decision. (Id. at 8-10.)

### B.     Thompson's Sentencing

On May 28, 2004, Thompson informed the Court that he did not want to withdraw his guilty plea. (Tr. May 28, 2004 Hr'g at 2.) The Court proceeded immediately to sentencing, and Counsel requested that the Court not add an obstruction of justice enhancement on the ground that Thompson's absconding did not actually hurt the case because Thompson had already pled guilty. (Id. at 3.) Counsel also asked the Court to give Thompson a reduction for acceptance of responsibility, and requested that Thompson be given the minimum sentence under the Guidelines. (Id.) The Government did not object to these requests. (Id. at 4.)

After allowing both Thompson and Counsel to make statements on

Thompson's behalf, the Court granted Counsel's request and gave Thompson a 3 level decrease for acceptance of responsibility, and declined to assign an enhancement based on obstruction of justice. The Court then sentenced Thompson to the minimum sentence under the Guidelines: 262 months followed by five years supervised release. (Id. at 8.) At the time, the Court stated the following:

> I'm glad that you've taken the time to reflect upon whether or not you should continue on with your plea of guilty or go to trial. With the facts that we're looking at, you were looking at and the evidence that the Government would have against you, it was almost a certainty that you would have been found guilty, and then the sentencing would have been just an enormous amount of time in prison, 360 months to life imprisonment. So with this, I am able to give you a lesser sentence. And you're correct; if you had not made some stupid decisions, you would have served substantially less than what I'm going to give you now.

(Id. at 7.)

### C.      **Habeas Corpus Standard**

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." To obtain relief under § 2255 for a constitutional issue that was not raised on direct appeal, Petitioner must demonstrate cause for the failure to appeal the issue directly and actual prejudice from the errors that he alleges. Reid v. United States, 976 F.2d. 446,

448 (8th Cir. 1992). Conclusory allegations will not support a § 2255 motion. Strickland v. Washington, 466 U.S. 668, 690 (1984).

### 1. Ineffective Assistance of Counsel Standard

In order to gain relief under § 2255 on the grounds that he received ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient and that he was prejudiced by that deficient performance. Hill v. Lockhart, 474 U.S. 52, 58 (1985) (citing Strickland, 466 U.S. at 693). Counsel's performance was deficient if it fell outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. There is a strong presumption that counsel conduct falls within that wide range of reasonable professional assistance. Id. In order to show prejudice, a petitioner must show that but for the errors of counsel, "he would not have pleaded not guilty and insisted on going to trial." Hill, 474 U.S. at 59. In other words, in order to prevail, a petitioner must show that his counsel made such serious errors that she was "not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687.

#### a. Thompson's Claims

Thompson first argues that Counsel was ineffective because she deprived Thompson of a beneficial plea agreement and a direct appeal. Thompson also argues that Counsel failed to object to, or to appeal, "the imposition of the maximum penalty in light of a . . . plea agreement for a specific sentence." (Def.

Mem. Supp. Mot. Vacate at 13.) Next, Thompson avers that he actually negotiated a stipulated plea under which his sentence would not exceed 120 months. Lastly, Thompson asserts that he was not fully informed of the consequences of pleading guilty.

### b.   Whether Thompson Entered Into a Stipulated Plea

Under Fed. R. Crim. P. 11, the Government and a defendant may enter into a stipulated plea whereby they agree that a specific sentence is appropriate. Fed. R. Crim. P. 11(c)(1)(C). If the parties enter into such an agreement, the court must either accept or reject the agreement "so that it may be determined whether the defendant shall receive the bargained-for concessions or shall instead be afforded an opportunity to withdraw his plea." Fed. R. Crim. P. 11(c)(2)(C) advisory comm. notes (1979 amend.). Thompson argues that the parties entered into a stipulated plea agreement that limited his sentence to 120 months. Thompson avers that this stipulation was violated when the Court "accepted the plea, but sentenced [Thompson] to the maximum penalty of 262 months." (Def. Mem. Supp. Mot. Vacate at 8.)

The Court can find no support for Thompson's allegation. The plea agreement Thompson signed states that under the Guideline range contemplated by the parties, the imprisonment range was 135-168 months. (Plea Agree. ¶ 11.) This range was also stated in open court at the plea hearing. (Tr. Feb. 28, 2003 Hr'g

at 6.) At the plea hearing, the Court asked Thompson if he understood and agreed to everything contained in the plea agreement prior to signing the document, and Thompson answered, "Yes." (Id. at 8-9.) Moreover, Thompson acknowledged that if the Presentence Investigation revealed that his criminal history category was greater or less than Category III, he could not withdraw from the agreement based upon that ground, and agreed that he would be sentenced in accordance with the applicable Sentencing Guidelines. (Plea Agree. ¶ 10.) This, of course, is what happened, and the changes were reflected in the revised PSI.

Thompson proffers no evidence to support his claim that Counsel's work was somehow defective regarding a stipulated plea. A stipulated plea did not exist, and thus Counsel did not err by failing to insist that Thompson be sentenced accordingly. Rather, the record reveals that Counsel successfully argued for Thompson to receive the minimum sentence under the Guidelines, even after he absconded from justice and was a fugitive for seven months.[1] The record is also clear the Thompson knew the sentencing range he was looking at under both PSIs, and that 120 months was not ever mentioned in either of those ranges.[2] Counsel's

---

[1] This evidence also sufficiently addresses Thompson's argument that Counsel failed to object to and appeal the Court's imposition of "the maximum penalty." (Def. Mem. Supp. Mot. at 13.) As stated above, Thompson's 262 month sentence was actually the minimum under the appropriate Guidelines.

[2] The Court notes, however, that the plea agreement mentions that there was a ten year mandatory minimum statutory penalty in this case. (Plea Agree. ¶ 11.)

performance was not deficient. Thus, the Court need not reach the issue of prejudice.

### c.     Whether Counsel Should Have Entered Into a "Conditional" Plea

"With the consent of the court and the government, a defendant may enter a conditional plea of guilty . . . reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Fed. R. Crim. P. 11(a)(2).

Thompson argues that the parties should have entered into a conditional plea so that he could have preserved his right to appeal the suppression issues ruled on by the Court. The record does not support this allegation. There is no mention of a conditional plea or of the opportunity to appeal suppression issues anywhere in the record.

The record shows that Thompson specifically waived his right to appeal the factual basis of his sentence. (Tr. Feb. 28, 2003 Hr'g at 13-14.) This cuts against his current argument that he intended to preserve issues for appeal.

Moreover, the record proves that Thompson discussed the plea with Counsel, Counsel explained the plea to him, he was satisfied with Counsel, he understood that he was giving up his right to a trial and to appeal the facts underlying his plea, that he was voluntarily giving up those rights, and that he understood what he was signing. (Id. at 8, 13-15.) The parties' and the Court's colloquy, and their insistence

that Thompson make a knowing and informed plea also provide evidence that Thompson knew what issues he was faced with, and what issues he was preserving or waiving with an appeal. Thus, since there is no evidence supporting the allegation that the parties should have, or intended to, enter into a conditional plea, Thompson's argument is without merit.

In addition, Thompson has failed to demonstrate how the loss of an appeal on suppression issues has prejudiced him. When Thompson filed his suppression motion, he failed to proffer any arguments or evidence to support his assertion that the search warrant at issue was not supported by probable cause. (Doc. No. 18 at 6 in Case No. 02-CR-308.) Thompson still makes no argument in this regard. Moreover, Thompson did not file any objections to the Magistrate Judge's Report and Recommendation recommending that the motion to suppress be denied. (Doc. No. 20 in Case No. 02-CR-308.) Thus, Thompson's current conclusory argument is without merit. See Strickland, 466 U.S. at 690 (conclusory arguments will not support § 2255 motions).

### d.  Whether Thompson's Counsel Adequately Explained the Consequences of Pleading Guilty

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the . . . likely consequences.'" Bradshaw v. Stumpf, Sup. Ct. No. 04-637, 125 S. Ct. 2398, 2405, ___ U.S. ___ (June 13, 2005) (citing Brady v. United States, 397 U.S. 742, 748

(1970)).

Thompson argues that he was not advised of the consequences of pleading guilty. Thompson cites no evidence in the record or conversation between himself and Counsel that support this argument, and the Court finds no support for this contention.

As discussed above, Thompson first pled guilty, then filed a motion to withdraw his guilty plea, and finally was given two additional weeks to consider his decision because Counsel expressed concern that Thompson was not comfortable with his decision to withdraw his plea. As discussed above, the record demonstrates that Thompson's plea was knowing. Counsel, the Court, and counsel for the Government all explained to Thompson the consequences of pleading guilty. (Tr. May 13, 2004 Hr'g at 2-10.) Thompson specifically stated that he understood what he was giving up, including an appeal based on the facts supporting his plea. (Tr. Feb. 28, 2003 Hr'g at 8-19.) Thus, the evidence demonstrates that Thompson pled guilty knowing the consequences of that action.

Moreover, even assuming *arguendo* that Counsel's advice was somehow below the objective standard of reasonableness and Thompson did not know the consequences of his plea, any advice to plead did not necessarily result in prejudice. In this case, with such strong evidence against Thompson, and such huge mandatory sentences if found guilty by a jury, it is likely that Thompson would not

have insisted on going to trial but for any advice from Counsel, and that his plea was a knowing, voluntary, and intelligent reaction to a "difficult" litigation situation. Bradshaw, 125 S. Ct. at 2407.

### 2. Failure to Appeal

Thompson states that after he was sentenced, Counsel advised him not to appeal. Thompson avers that only recently has it come to his attention that he had viable claims for appeal, such as the suppression issue.

According to the plea agreement, Thompson was only able to appeal the imposition of the sentence ordered by the Court – he waived the right to appeal all the factual issues surrounding his guilty plea. To the extent that Counsel advised Thompson not to appeal those issues, Counsel was correct. To the extent Counsel advised Thompson not to appeal the length of his sentence, this was also reasonable. At the time Thompson was sentenced, the Sentencing Guidelines were mandatory. United States v. Booker, Sup. Ct. No. 04-104, 125 S. Ct. 738, 750, 751, 543 ___U.S. ___ (Jan. 12, 2005). Thus, the lowest sentence Thompson could have obtained without a downward departure was 262 months – the sentence he received. By absconding from justice and failing to assist the Government in its investigations, Thompson squandered his opportunity for a downward departure based on providing substantial assistance to the Government. As the Court has already noted, but for the requests of Counsel that Thompson not be given an

enhancement for obstruction of justice, that Thompson be allowed to accept responsibility at that late date, and that Thompson be sentenced to the minimum under the Guidelines, there was the potential for a much longer sentence. Therefore, Counsel's performance was not deficient.

## IV. CONCLUSION

Thompson has failed to demonstrate that Counsel's work was deficient or that he suffered any prejudice because of Counsel's actions. Thus, Petitioner Thompson's motion is denied. Accordingly, Thompson's request for an evidentiary hearing is also denied.

**IT IS HEREBY ORDERED** that Petitioner Thompson's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence [Doc. No. 37 in Case 02-CR-308 and Doc. No. 1 in Case No. 05-CV-813] is **DENIED**.

Dated: August 10, 2005

                                                            s/ Michael J. Davis
                                                            Judge Michael J. Davis
                                                            United States District Court